# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00470-CR

**Lawrence Troyan, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY,
### NO. D1-DC-07-907740, HONORABLE MICHAEL DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Lawrence Troyan was convicted of assaulting his wife. *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2009) (assault). After a trial was held, he was sentenced to two years' imprisonment. On appeal, Troyan contends that the evidence is factually insufficient to support his conviction. We will affirm the judgment of the trial court.

## BACKGROUND

On an afternoon in September 2007, Troyan was arguing with his wife Vena Troyan in their front yard. During the argument, Mark McGrody was outside a few houses down on the other side of the street. McGrody observed the couple argue, saw Troyan hit Vena, and called 911. Once the couple stopped fighting, they went back inside their home. A few minutes after the couple

went inside, Deputy Sean Harrington and Deputy Ensminger[1] arrived at the scene. The officers talked with McGrody about what he had witnessed and then went to the Troyans' home. Upon arriving at the home, the officers talked to both Troyan and Vena about the argument and eventually arrested Troyan.

Ultimately, Troyan was charged with assaulting Vena.[2] *See id.* § 22.01(a)(1) (explaining that person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another"). Because Troyan had previously been convicted of assaulting a member of his "family or household," the offense charged was elevated to a felony offense. *See id.* § 22.01(b)(2) (elevating assault from misdemeanor to felony if defendant was previously convicted of assaulting member of his household). A trial was held, and Troyan, Vena, McGrody, Harrington, and Ensminger all testified. At the conclusion of the trial, the jury found Troyan guilty of the charged offense, and the trial court sentenced Troyan to two years' imprisonment.

Troyan appeals the judgment of the trial court.

## DISCUSSION

In his sole issue on appeal, Troyan argues that the evidence is factually insufficient to support his conviction for assault. In factual-sufficiency determinations, all of the evidence is considered in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). When performing this analysis, courts bear in mind that the fact finder is the sole judge of the weight and

---

[1] The record does not specify Ensminger's first name.

[2] Specifically, the indictment alleged that Troyan "intentionally, knowingly, or recklessly cause[d] bodily injury to Vena Troyan, a member of . . . Troyan's family and household and with whom Lawrence Troyan has had a dating relationship, by striking . . . Vena . . . with his hand."

2

the credibility of the evidence presented. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *see also* Tex. Code Crim. Proc. Ann. art. 36.13 (West 2007) (explaining that "jury is the exclusive judge of the facts"). Under a factual-sufficiency review, a reversal is not warranted simply because the appellate court has "a subjective level of reasonable doubt." *Watson*, 204 S.W.3d at 417. Rather, the judgment may only be set aside if (1) the evidence is "so weak that the jury's verdict seems clearly wrong and manifestly unjust," or (2) the verdict is "against the great weight and preponderance of the evidence." *Id.* at 414-15.

A person commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Penal Code Ann. § 22.01(a)(1). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West Supp. 2009). "This definition is broadly construed to include 'even relatively minor physical contacts so long as they constitute more than mere offensive touching.'" *Aguilar  v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (quoting *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989)).

In challenging the sufficiency of the evidence, Troyan notes that although McGrody stated that he saw Troyan hit Vena, both Vena and Troyan denied that allegation in their testimonies and in their conversations with the responding officers. Specifically, Vena explained that on the day in question, she and Troyan had an argument and that they moved the argument "outside so that the[ir] kids wouldn't see [them] arguing." Further, she explained that while they were outside, Troyan was "like maybe five feet away from" her but that Troyan moved closer to her during the times in which they "came into each other." She also testified that during the fight both she and

Troyan were yelling, that Troyan was moving his hands around, and that she "was throwing [her] hand up at him, flicking him off." Finally, she testified that Troyan had no physical contact with her during the argument and that the argument ended when they "agreed to stop fighting" and to take their children to go do something.[3]

Similarly, Troyan stated that the fight started inside the home, that he and Vena were cursing at each other, that he told her that he was going to leave the house, and that the fight continued outside. Although Troyan testified that he moved his arms around during their fight, he insisted that he did not punch or physically hurt Vena in any way. Further, Troyan explained that at the end of the fight, he turned around, saw McGrody, and told Vena that he was going inside.

McGrody, on the other hand, testified that he saw Troyan hit Vena. Specifically, he testified that when he was outside, he saw Troyan and Vena arguing. McGrody said that the couple was "about three houses . . . across the street" from where he was.[4] Regarding the argument, McGrody elaborated that although he could not understand most of what was being said, they "were yelling at each other" and that Troyan "kept saying 'You want me to F you up dude, fuck you up dude.'" Moreover, he explained that hearing that kind of language caused him to watch the argument "a little closer." Further, McGrody stated that at first Troyan and Vena were apart from one another but then he saw Troyan "haul[] off and pop[] her right . . . in the chest area." McGrody also communicated that after Vena was punched, "She kind of you know went back a little bit but

_____

[3] Vena also testified that she told the responding officers that Troyan did not hit her.

[4] When attacking the sufficiency of the evidence, Troyan emphasizes that McGrody was some distance away from him and Vena during their argument. Although McGrody did testify that the argument happened several homes up the road from where he was standing, he also testified that he was farsighted and, accordingly, could "see things real well far off."

4

the wall was directly behind her and so I think she couldn't go back any further." McGrody also admitted that he did not see anyone fall down, run off, or scream. In addition, McGrody explained that at the time of the punch, he "could see both of them . . . and . . . could . . . definitely see her front." Finally, McGrody insisted that he was certain that he saw Troyan punch Vena. In particular, he stated, "Yeah I'm definitely confident about what I saw, I wouldn't come to court and testify against somebody if I wasn't sure of what I saw." Similarly, in his testimony, he explained that he had no plans to get involved in the argument unless he saw the argument turn physical.

Although Troyan correctly points out that Vena's and Troyan's recitations of the incident in question are inconsistent with that of McGrody, the jury is charged with resolving inconsistencies in the evidence and with weighing the credibility of the various witnesses. *See Watson*, 204 S.W.3d at 414 (explaining role that jury's resolutions have in factual-sufficiency reviews). Moreover, when weighing the credibility of the two witnesses, the jury was aided by the testimony of Deputy Harrington regarding an injury to Vena that he noticed when he arrived on the scene. In particular, he stated that he saw a scratch on her "neck area," which was generally consistent with McGrody's testimony regarding where he saw Troyan punch Vena. Moreover, although Vena characterized the scratch as small,[5] stated that it was not bleeding and had no

---

[5] Troyan argues that because the scratch was small and because there was no testimony demonstrating that there was any swelling or redness around the injury, the evidence regarding the injury cannot properly support his conviction. In further challenging the sufficiency of the evidence, Troyan notes that although McGrody testified that he saw Troyan hit Vena, McGrody provided no testimony regarding whether he heard Vena make any sound indicating that she had been hit.

As mentioned previously, the term "bodily injury" includes relatively minor physical contacts. *Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). There is no requirement that the victim have a visible injury, *see* Tex. Penal Code Ann. § 1.07(a)(8)

5

bruising, and explained that the injury must have occurred when one of her children jumped on her and scratched her, Harrington stated that the wound "appeared fresh with blood on it." Furthermore, when describing Vena's appearance at the time he arrived, Harrington stated that she appeared to have "been in some type of I guess disturbance. Her face was really red, it appeared . . . she had either been crying or was upset due to her face."[6]

In addition, when making a credibility determination regarding Vena, the jury could have properly considered an admission by Vena that she lied to the responding officers when they arrived at her home. Specifically, Vena admitted that she lied and initially told the police that no one else was in the home because she "know[s] what always happens." Additionally, Deputy Esminger testified that when he first arrived at the scene, Vena "was being uncooperative."

Similarly, when making a credibility determination regarding Troyan, the jury could have considered the fact that Troyan stipulated that he had previously been convicted of assaulting a member of his "family and household and with whom [he] had a dating relationship."

---

(West Supp. 2009), and juries may infer that a victim "felt or suffered physical pain," *Aguilar*, 263 S.W.3d at 434. In fact, juries may infer physical pain "from the altercation itself even without direct evidence." *Id.*

Accordingly, the fact that the visible injury was described as relatively minor does not render the conviction factually insufficient. Moreover, although in his testimony McGrody was able to identify certain things that were said between Troyan and Vena during their argument, he also indicated that he "couldn't really hear what [Vena] was saying." For that reason, among others, the fact that McGrody did not testify that he heard Vena audibly express pain would not prohibit the jury from properly inferring, based on the other evidence, that Vena experienced pain.

[6] Troyan notes in his statement of facts that Esminger testified that Vena did not seem upset when the officers arrived. However, as previously mentioned, the jury is charged with resolving inconsistencies in the evidence and with determining what weight if any to give any piece of evidence.

Furthermore, they could have considered Deputy Esminger's testimony that at the time the officers entered the home, Troyan appeared to be hiding from them. In particular, Esminger stated that he and Harrington performed a safety sweep in order to ascertain if anyone else was in the house. Further, Esminger explained that while performing the sweep, he found Troyan "hiding in the kitchen." In particular, Esminger stated that Troyan was "squatted down next to" "a bird cage or a dog kennel or something" and was "below the counter space to where we couldn't see him." Troyan denied that he was hiding[7] and instead stated that he was putting his dog in the kennel because his dog went "crazy" when the officers knocked; however, Esminger also stated that Troyan was cooperative at first but then "started turning around . . . trying to bow up on us and . . . we had to take physical control of him . . . and placed him in handcuffs."[8]

When viewing all of the evidence in a neutral light, particularly McGrody's testimony regarding what he witnessed, Vena's and Troyan's descriptions of the heated nature of their argument, the testimony regarding an injury to Vena, and the evidence concerning the credibility of Vena and Troyan, we conclude that a reasonable trier of fact could have rejected the portions of Vena's and Troyan's testimonies stating that Troyan did not hit Vena and credited McGrody's version of the events. Accordingly, we cannot conclude that the evidence supporting the judgment is so weak as to make the jury's verdict clearly wrong or unjust, nor can we conclude that the verdict

---

[7] In his testimony, Troyan stated that if he had wanted to hide from the police, there were several other places in the house that he could have gone. Esminger admitted that kneeling beside a dog kennel was not a great hiding spot and acknowledged that it was "possible" that there were better hiding spots in the home.

[8] Although both Troyan and Vena testified that Troyan did not resist the officers when he was escorted out, neither of them denied that the officers handcuffed Troyan.

is against the great weight and preponderance of the evidence.[9]  Therefore, the evidence is factually

sufficient.  For that reason, we overrule Troyan's issue on appeal.

## CONCLUSION

Having overruled Troyan's sole issue on appeal, we affirm the judgment of the

trial court.

---

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:  March 19, 2010

Do Not Publish

---

[9]  In his briefs, Troyan notes that "no 911 call was submitted into evidence."  Because the responding officers and McGrody testified  regarding their observations, it is not entirely clear how the absence of a 911 bears upon the sufficiency of the evidence.  In any event, based on the evidence presented at trial, we conclude that the evidence is factually sufficient to support Troyan's conviction.